UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MARIO ALBERTO VILLARREAL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. V-01-22-01 |
| | § | |
| UNITED STATES OF AMERICA, | § | CIVIL ACTION NO. V-03-64 |
| | § | |
| Respondent. | § | |

## MEMORANDUM & OPINION

Pending before the Court is Petitioner Mario Alberto Villarreal's ("Villarreal") Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. #39). Also pending before the Court are the Respondent's Motion to Deny Relief (Dkt. #40) and Motion to Notify Court as to State of the Case (Dkt. #43). For the reasons set forth herein, the Respondent's motions are granted and Villarreal's § 2255 motion is denied.

### Factual and Procedural History

Villarreal, an inmate confined at the United States Penitentiary in Bastrop, Texas, filed a motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255(1).

On April 26, 2001, a federal grand jury charged Villarreal with one count of knowingly possessing with intent to distribute approximately 1,036 kilograms of marihuana in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). On July 10, 2001, the jury found Villarreal guilty of the offense charged. On October 1, 2001, the Court sentenced Villarreal to serve 121 months in the custody of the Bureau of Prisons, five years supervised release, a $2,000 fine, and a $100 special assessment. Villarreal appealed his conviction, which was affirmed by the Fifth Circuit on July 16, 2002. Villarreal timely filed his petition to vacate on June 18, 2003.

The facts leading to Villarreal's arrest and conviction are as follows. At approximately 5:45

a.m. on March 30, 2001, officer Jeffrey Raymond ("Raymond") with the Refugio, Texas Police Department noticed a white tractor-trailer with two broken lights. Raymond stopped the vehicle for these violations. The driver and sole occupant was Villarreal. Villarreal volunteered to Raymond that he had an outstanding warrant for another traffic violation. Raymond was surprised by this admission. Raymond told Villarreal that he planned to issue a verbal warning for the broken lights and asked Villarreal if there was anything illegal in the trailer. In response, Villarreal stated that he had a gun and admitted that he had been arrested previously on gun charges.

Raymond asked Villarreal if he could search the tractor and Villarreal consented to the search. In the tractor, Raymond noticed four air fresheners and found two bills of lading. Raymond also found a logbook in the same compartment as the bills of lading but it contained no entries. One of the bills of lading indicated that Villarreal was making a delivery in New York and had loaded the day before. Villarreal also agreed to allow Raymond to search the trailer, and unlocked it for him. Raymond noticed that there were carrots on the floor in the middle of the trailer. The rest of the load looked level across the top. Initially, Raymond thought that a couple bags of carrots must have fallen off a pallet due to a shifting of the load. Raymond entered the trailer and moved toward the front, stopping where he had seen the carrots laying on the floor. At that point, Raymond saw large bundles in clear plastic which appeared to be covered with motor oil or grease. Upon probing the bundles, he discovered the marihuana. Raymond confronted Villarreal and placed him under arrest.

Raymond testified that it was unusual that the truck had been loaded the day before because most drivers do not wait so long before leaving with a perishable load. Although he stated that it was not unheard of for a driver to wait 12 hours before leaving with a load, he testified that most drivers try to move their loads as quickly as possible. Raymond also testified that he thought the

empty logbook was strange because drivers are required to make entries in a logbook if they have more than 150 miles to drive and face stiff penalties plus at least an eight-hour suspension when they do not keep their logbooks.  Drivers are also supposed to keep track of their stops, pretrip inspections, and instances where they are in the sleeper berth off-duty.  Raymond asked Villarreal why he had not made any entries in the logbook, and Villarreal answered that he had not bought one.  When Raymond told him he had found one in the truck, Villarreal responded that it was not his.

Ultimately, the tractor trailer was moved to the Refugio Police Department annex, where it took five to six men two hours to uncover and offload the marihuana.  In total, there were 32 bundles of marihuana, each weighing between 40 and 95 pounds, for a total weight of 2,241.33 pounds.  David Merritt ("Merritt"), a police detective who helped off load the marihuana, corroborated that it was an arduous task.

Merritt interviewed Villarreal who told him the following regarding his activities on March 29, 2001.  Around 10:00 a.m. on that day, Villarreal picked up the rig from the home of its owner, Juan Francisco Rodriguez ("Rodriguez").  The rig was empty when he picked it up.  Afterwards, he went home, arriving at around 10:30 a.m.  He parked the rig in a church parking lot across the street from his house.  At 4:00 p.m., Villarreal went to Donna, Texas to the Country Best produce warehouse to pick up the load of carrots he was to transport to New York.  Villarreal claimed he was in the cab of the truck with his daughter while it was being loaded.  He also stated that it took five people 30-40 minutes to load the trailer.  The trailer was loaded by 5:00 p.m.  Upon inspection, everything looked stable with load locks in place.  Villarreal put a padlock on the door at 5:30 p.m. and took his daughter home, arriving at around 6:15 p.m.  At home, Villarreal took a shower, packed his clothes, and ate dinner.  He left his home at about 8:30 p.m. and traveled to Edinburg, Texas for a cup of coffee.  He stayed in Edinburg for about 5-10 minutes and then stopped in Encino, Texas

for another cup of coffee.  At approximately 6:45 p.m., he went through the Falfurrias, Texas checkpoint.  The border patrol walked a canine around the truck, but the dog did not alert and Villarreal was allowed to pass through.  Villarreal told Merritt that he then went to Robstown where he slept for two to four hours.  He also told Merritt that he left Robstown at 3:00 a.m. on the morning of March 30th and drove toward Victoria and Edna, Texas.  He was stopped by Raymond in Refugio at around 5:42 a.m.

Merritt testified that even in heavy traffic it takes less than one hour to get from Robstown to Refugio.  Another witness testified that Robstown and Refugio were only 45 minutes apart.  Merritt pointed out to Villarreal that there were many hours unaccounted for in his timeline, and noted that it does not take two-and-one-half hours to get from Robstown to Refugio.  When asked whether Villarreal had an explanation for the amount of time that elapsed, Villarreal looked at him, smiled, and said "no."

Santiago Gamez ("Gamez"), a deputy with the Nueces County Sheriff Department, testified that he has investigated many cases where drugs and produce have been carried in tractor trailers.  Gamez inspected both the bill of lading and the logbook which were located together in the tractor.  From the bill of lading, Gamez determined Country Best was shipping a legitimate load of carrots to Alex Choo, the owner of Kia Farms in New York.

Gamez took custody of the confiscated marihuana.  The bundles were bigger in size and heavier in comparison to bundles in other cases Gamez has seen and were difficult to move.  Gamez also visited the Country Best facility in Donna, Texas in April 2001.  At Country Best, he observed a lot of activity and estimated that there were probably 30-40 people at the dock area when he arrived.

Jose Antonia Garcia ("Garcia") loaded Villarreal's trailer on March 29, 2005.  Garcia

testified that the trailer was empty before he started loading it.  Garcia testified that he was the only person who loaded the trailer and that it took him about 30 minutes to load the trailer one pallet at a time.  Garcia testified that the top layer was even after he loaded the carrots onto the truck.  Garcia examined Government Exhibit 7, which was a picture of what the load in the trailer looked like when it was stopped by Officer Raymond.  Garcia explained that the load of carrots in the picture looked different from the way it looked after he loaded the trailer because the load was no longer even all the way across.

The Country Best dispatcher testified that the company was very busy during the latter part of March because of the "picking season."  Jay Humphreys ("Humphreys") the sales manager for Country Best, explained that he could observe every truck loaded on the premises from his office.  Humphreys testified that during the busy season, forklift drivers have about a minute's notice as to which truck would be loaded next.  The loader in charge of making sure trucks are loaded with the correct product, also has about a minute's notice as to which truck will be loaded next.  Humphreys emphatically testified that there was no possibility that someone came to the delivery yard with a two thousand pound load of marihuana and placed it into the trailer before Villarreal left with it.

At trial, Villarreal denied knowing the marihuana was in the trailer he was transporting to New York.  On the stand he told a different story regarding his activity between the time he picked up the load of carrots and when he was stopped in Refugio than the one testified to by Merritt.  For instance, Villarreal stated that on the morning of March 30, 2001, he awoke at about 4:00 or 4:30 a.m., brushed his teeth, washed his face in the restroom, and proceeded to a gas station to buy some coffee before leaving Robstown.  However, Merritt testified that Villarreal told him he left Robstown at 3:00 a.m.  When questioned about the inconsistences of his testimony, Villarreal suggested that Merritt must have misunderstood him.  He did admit, however, that except for the

people who put the carrots on the truck he was the only person who had access to the trailer because he had exclusive control of the key to the padlock he placed on the trailer.

At the trial, Villarreal retained attorney Joseph Barroso of Corpus Christi to represent him. During the July 2001 trial, Villarreal's sole defense was that he lacked the requisite knowledge to be guilty of the offense charged. He testified that the tractor trailer he was driving belonged to Rodriguez of J&R Trucking, and that Rodriguez had previously employed him to drive produce to different parts of the country. Villarreal testified that Rodriguez called and asked him to drive the truck to New York on March 29, the day before he was arrested. He testified that he had never had any problems driving for the same company in the past. Despite Villarreal's position, defense counsel failed to move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at either the close of the Government's evidence or the close of all the evidence.

On appeal, Villarreal argued that the Government failed to prove beyond a reasonable doubt that he knowingly possessed the marihuana secreted in the trailer. The Fifth Circuit held that because of Villarreal's failure to move for judgment of acquittal at the close of the Government's case or the close of all the evidence, "precedent . . . requires that we restrict our review to whether Villarreal's conviction resulted in a 'manifest miscarriage of justice.'" *United States v. Villarreal*, 45 Fed. Appx. 322, 322 (5th Cir. 2002) (quoting *United States v. Smith*, 203 F.3d 884, 887 (5th Cir.2000)). Under this standard, the Court was obligated to reverse only if the record was "devoid of evidence pointing to guilt or if the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* (quoting *Smith*, 203 F.3d at 887). The Court held that, although Villarreal's knowledge could not be inferred merely from his control over the vehicle, it could be inferred from other facts. *Id.*

The Court noted that the truck was loaded in broad daylight on a busy loading dock, and that

it was not at the dock long enough for someone to secretly load 1,000 kilograms of marihuana. *Id.* The Fifth Circuit also noted that "time discrepancies" existed in Villarreal's account of the events in the 12 hours leading up to his arrest, that Villarreal could not explain the uneven manner in which the produce was loaded, and could not explain why he did not "inspect" the load. *Id.* The Court also noted that Villarreal seemed unconcerned about the time that had elapsed since taking possession of the perishable load. *Id.* Therefore, the Fifth Circuit found that the record was "not devoid of evidence pointing to guilt" and affirmed Villarreal's conviction. *Id.*

## Standard

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## Analysis

Villarreal's claims are couched as ineffective assistance claims. Villarreal argues that his right to effective assistance of counsel was violated because his trial counsel's failure to move for judgment of acquittal (1) deprived him of an opportunity to have the Court rule on the motion; (2) prevented the district court from making findings on the record regarding the motion; and (3) subjected him to a more stringent standard of review on appeal.

Such allegations presented in a § 2255 motion are properly analyzed under the two-prong

analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071, 115 S. Ct. 1709 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Because the Court finds that Villarreal cannot establish that he was prejudiced by his lawyer's failure to move for judgment of acquittal, the Court will presume for purposes of this Memorandum & Opinion that Villarreal can establish that his trial counsel's performance was deficient.

**I.     Denial of Opportunity to Have the Court Rule on a Motion for Judgment of Acquittal**

Under Rule 29, after the close of the government's evidence or at the close of all the evidence, the Court on the defendant's motion or on its own, must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29. As discussed below, the evidence was sufficient to sustain Villarreal's conviction. Therefore, he was not prejudiced by the fact that the Court never ruled upon a motion for judgment of acquittal. Accordingly, he is not entitled to habeas relief on that ground.

## II.     Lost Opportunity for the Court to Make Findings on the Record Regarding a Motion for Judgment of Acquittal

In order to prove prejudice resulting from ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Villarreal's argument that the Court never had an opportunity to make findings on the record does not purport to show that such findings would have reasonably changed the outcome of his trial.  Accordingly, Villarreal is not entitled to relief on the ground that the Court never had an opportunity to make findings on a motion for judgment of acquittal because he has not proven that he was prejudiced by that lost opportunity.

## III.    Prejudice Due to a More Stringent Standard of Review on Appeal

Villarreal asserts that had his trial counsel urged the acquittal motion, he would have been entitled to the standard of review announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979).  Under that standard, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319, 99 S. Ct. at 2789.  Villarreal argues that had he received the benefit of this "rational trier of fact" standard, the Fifth Circuit's consideration would have undoubtedly been different.  To the extent Villarreal argues that the outcome would have been different, the relevant benchmark for determining whether a federal habeas petitioner is entitled to relief, the Court finds no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A conviction for possession with intent to distribute marihuana requires proof of three elements: (1) knowledge (2) possession (3) and intent to distribute.  *United States v. Delgado*, 256

9

F.3d 264, 274 (5th Cir. 2001). The issue before the Court is whether the record supports the jury's finding that Villarreal's possession was knowing. Juries may infer knowledge from the defendant's control over a vehicle containing contraband unless the drugs are hidden in compartments, in which case proof of the defendant's knowledge depends on inference and circumstantial evidence. *United States v. Garcia-Flores*, 246 F.3d 451, 454 (5th Cir. 2001). In hidden compartment cases, such as in the case at bar, knowledge cannot be inferred from mere control of the vehicle because there is "a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise. *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). In such cases there must be additional evidence indicating knowledge on the part of the defendant. *Id.*

Villarreal testified that after it was loaded, he personally locked the trailer and admitted that he had exclusive control of the key to the padlock he placed on the trailer. In addition to his control over the trailer, several other facts indicated that Villarreal had knowledge of the concealed marihuana in the trailer.

First, the evidence suggests that the marihuana was loaded onto the trailer while Villarreal was in control of the trailer. Villarreal testified that the tractor trailer was empty at the time he picked it up from Rodriguez's home. Garcia, who was in charge of loading the trailer, also testified that the trailer was empty when he began loading it. In total the trailer was at the shipping yard for one hour and 17 minutes. The loading process took place in the daytime in a busy area. Humphreys emphatically testified that there was no possibility that someone came to the delivery yard with a two thousand pound load of marihuana and placed it into the trailer before Villarreal left with it.

Second, Villarreal failed to persuasively account for a 12-hour discrepancy between the time of loading and the time he was stopped by Raymond. More specifically, Villarreal did not

adequately account for the time period between when he left Robstown to when he was stopped by Raymond in Refugio at around 5:42 a.m.  The Court finds that a reasonable trier of fact could have found beyond a reasonable doubt that Villarreal left Robstown at 3:00 a.m. rather than around 4:30 a.m. on the morning of March 30.  Merritt and another witness testified that even in heavy traffic it would have taken less than one hour to travel from Robstown to Refugio.  Thus, at the very latest, Villarreal should have arrived in Refugio at around 4:00 a.m.  This means that Villarreal could not account for approximately one hour and 42 minutes of time.  A reasonable trier of fact could have found beyond a reasonable doubt that the marihuana was loaded somewhere between Robstown and Refugio during this time period.

Third, Villarreal also failed to adequately explain why the produce was no longer evenly stacked when he was stopped by Raymond.  Fourth, Raymond found Villarreal's behavior on the traffic stop to be unusual.  Villarreal's lack of concern for the time elapsed was peculiar given the load of perishables for which he was personally responsible. Villarreal also offered information of an outstanding warrant and admitted to possessing a gun and previous gun charges filed against him, which lead Raymond to believe that Villarreal was trying to divert his attention from something else in the trailer.  Fifth, there were no entries in the logbook found in the tractor, although drivers are required to make entries if they are driving more than 150 miles and can be penalized for noncompliance.

Based on the abundant circumstantial evidence discussed above, a rational trier of fact could have found the essential elements of Villarreal's crime beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  Accordingly, Villarreal has not demonstrated a reasonable probability that, but for his counsel's failure to move for judgment of acquittal, the result of his trial would have been different.  The Court does not find that the performance of Villarreal's trial counsel affected

the fairness of his trial and appeal.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability" ("COA"). 28 U.S.C. § 2253(c)(1)(A). Although Villarreal has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595. 1604 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84, 120 S. Ct. at 1604).

The Court concludes that reasonable jurists could not debate the denial of Villarreal's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve

encouragement to proceed further. *Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034 (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, Villarreal is not entitled to a COA as to any of his claims.

## Conclusion

For the foregoing reasons, the Court hereby DENIES Villarreal's Motion to Vacate Sentence Under 28 U.S.C. § 2255 (Dkt. #39), GRANTS Respondent's Motion to Deny Relief (Dkt. #40), and GRANTS Respondent's Motion to Notify Court as to State of the Case (Dkt. #43). The Court also DENIES Villarreal a Certificate of Appealability.

It is so ORDERED.

**SIGNED** on this 14th day of December, 2005.

                              *John D. Rainey*
                              JOHN D. RAINEY
                              UNITED STATES DISTRICT JUDGE